SIGNED this 3rd day of August, 2012

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>    MD RECYCLING, INC.,<br><br>                  Debtor. | No. 10-52148<br>Chapter 7 |
| MARGARET B. FUGATE, Trustee,<br><br>    Plaintiff,<br><br>vs.<br><br>GREENEVILLE LIGHT & POWER SYSTEM,<br><br>    Defendant. | Adv. Pro. No. 12-5014 |

## **M E M O R A N D U M**

APPEARANCES:

| | | |
|---|---|---|
| D. Stephen Duncan, Esq.<br>Post Office Box 1848<br>Johnson City, Tennessee 37605<br>Attorney for Plaintiff<br>Margaret B. Fugate, Trustee | Jason Brill Shorter, Esq.<br>Post Office Box 4210 CRS<br>Johnson City, Tennessee 37602<br>Attorney for Defendant<br>Greeneville Light & Power System | Cathy Moses, Esq.<br>1100 L Street, N.W.<br>Washington, D.C. 20530<br>Attorney for Intervener<br>United States of America |

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge**. This is a preference action by the chapter 7 trustee to avoid and recover pursuant to 11 U.S.C. §§ 547 and 550 a $47,776.62 prepetition payment by the debtor MD Recycling, Inc. to Greeneville Light & Power System ("GLPS"). Presently before the court is GLPS's motion to dismiss based on its assertion that it has sovereign immunity from suit under the Eleventh Amendment to the United States Constitution. For the reasons set forth below, GLPS's motion to dismiss will be denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(F).

I.

On August 16, 2010, MD Recycling, Inc. filed for bankruptcy relief under chapter 7. Margaret B. Fugate was appointed trustee. On March 13, 2012, she timely commenced this preference adversary proceeding against GLPS. In response, GLPS filed on April 13, 2012, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1] GLPS asserts that as an agency of the Town of Greeneville, it is a division of the State of Tennessee, thus immune from suit under Eleventh Amendment sovereign immunity. In its motion, GLPS acknowledges that the United States Supreme Court has expressly held that sovereign immunity does not bar actions by a bankruptcy trustee to set aside preferential transfers to a state or state agency. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 126 S. Ct. 990 (2006). GLPS argues, however, that the Supreme Court implicitly rejected *Katz* in two recent

---

[1] Although GLPS premised its motion to dismiss on Rule 12(b)(6), applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7012(b), it may have also or alternatively cited Rule 12(b)(1). *See Nair v. Oakland Ctny. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006) ("If a State refuses to invoke its sovereign immunity as a threshold defense, usually by way of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, it cannot credibly be heard to complain about the indignity of the federal courts resolving the merits of its case-and in its favor no less."); *see also* 5B *Fed. Prac. & Proc*. § 1350 (3d ed. 2012) ("As the abundance of case citations in the notes appended to this paragraph indicate, the Rule 12(b)(1) motion to dismiss for a lack of subject matter jurisdiction also may be appropriate . . . when the plaintiff's claim is barred by one of the various aspects of the doctrine of sovereign immunity . . . ."); *but see Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008) ("[W]e have held that sovereign immunity does not diminish a court's subject-matter jurisdiction. . . . The ability of governments to waive the benefit of sovereign immunity demonstrates that the doctrine is non-jurisdictional . . . for real jurisdictional limits can't be waived. Sovereign immunity concerns the remedy rather than adjudicatory competence.").

2

decisions. The Trustee and the United States of America, as intervener, disagree. They also assert that GLPS has failed to establish that it is an arm of the state such that it is entitled to invoke sovereign immunity, even if GLPS is correct that *Katz* is no longer good law.

II.

Turning to the latter issue first, it is well-settled that not all governmental entities are entitled to assert Eleventh Amendment sovereign immunity. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). Rather, only arms of the state can assert the state's immunity. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002). "The entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, i.e., that it is an arm of the state." *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 324 (6th Cir. 2010). Whether an entity is an arm of the state for sovereign immunity purposes is a question of federal law. *Id*. at 330 (citing *Regents of the Univ. Cal. v. Doe*, 519 U.S. 425, 429, n.5, 117 S. Ct. 904). Under federal law, sovereign immunity does not generally extend to units of local government such as cities and counties. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 369, 121 S. Ct. 955 (2001); *see also N. Ins. Co. of New York v. Chatham Cnty.*, 547 U.S. 189, 193-94, 126 S. Ct. 1689 (2006) ("Municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." "This is true even when . . . such entities exercise a slice of state power.") (quoting *Jinks v. Richland Cnty.,* 538 U.S. 456, 466, 123 S. Ct. 1667 (2003), and *Lake Cnty. Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 401, 99 S. Ct. 1171 (1979)); 2 *Collier on Bankruptcy* ¶ 106.02[2][c] (16th ed. 2012). Stated differently, state instrumentalities that properly are characterized as political subdivisions, rather than arms of the state, are not entitled to sovereign immunity." *Lowe*, 610 F.3d at 325 (citing *Ernst*, 427 F.3d at 358-59).

Whether a governmental entity is an "arm of the state" entitled to assert Eleventh Amendment sovereign immunity, as distinguished from a "political subdivision," which is not immune, is governed by four factors: (1) the state's potential liability for a judgment against the entity; (2) the language employed by state courts and state statutes to describe the entity, as well as the degree of control and veto power which the state has over the entity; (3) whether state or local officials appoint the entity's board members; and (4) whether the entity's functions fall under the

traditional purview of state or local government. *Lowe*, 610 F.3d at 325. The first factor, the potential liability of the State for the judgment, is the "foremost factor." *Id*. Moreover, the fact that a governmental entity's programs "are designed to serve a specific local community weighs against characterizing it as an arm of the state, rather than a political subdivision." *Id*. at 332.

In the present case, as the sole support for its proposition that it is an arm of the State of Tennessee, GLPS cites a 1932 Tennessee Supreme Court decision, *White v. Callis*, 51 S.W.2d 485 (Tenn. 1932), wherein the court stated, in the context of holding that the Tennessee Legislature may constitutionally regulate the amount of the privilege tax levied by a chartered municipality, that "[t]he municipality is an arm of the state, was created by it, and the Legislature may repeal its charter altogether or modify or amend it at pleasure." *Id*. at 485. As an expression of state law, the Tennessee Supreme Court's statement is instructive as evidence regarding the second factor of the four *Lowe* factors. However, GLPS has presented no proof as to the remaining three factors, including the most important, the State of Tennessee's potential liability for the judgment. Further, although far from determinative, the fact that GLPS is named after the Town of Greeneville suggests that its programs are designed to serve a specific local community, the Town of Greeneville and its surrounding area. Because cities and their agencies are generally recognized as non-immune political subdivisions and otherwise because GLPS has failed to carry its burden of establishing that it is an arm of the State of Tennessee entitled to invoke Eleventh Amendment sovereign immunity, GLPS's motion to dismiss on the basis of sovereign immunity must be denied.

Notwithstanding this conclusion, the court will address the more substantive basis for GLPS's motion to dismiss, its argument that the Supreme Court's *Katz* decision is no longer controlling. At issue in *Katz* was whether Congress's abrogation of state sovereign immunity in § 106(a) of the Bankruptcy Code was valid. *Katz*, 546 U.S. at 361. Pursuant to this section, "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [certain enumerated provisions of the Bankruptcy Code set forth in 11 U.S.C. § 106(a)(1), including §§ 547 and 550]." 11 U.S.C. § 106(a). Under the Bankruptcy Code, the term "governmental unit" is defined broadly to include federal, state, local, and foreign governmental units. *See* 11 U.S.C. § 101(27).

4

Prior to *Katz*, the circuits were split over whether Congress has the constitutional authority under the Bankruptcy Clause of the United States Constitution to abrogate the states' Eleventh Amendment immunity. 2 *Collier on Bankruptcy* ¶ 106.02[1] (16th ed. 2012). Five concluded that it did not, while one, the Sixth Circuit Court of Appeals, concluded that it did. *See Hood v. Tenn. Student Assistance Corp. (In re Hood)*, 319 F.3d 755, 761 (6th Cir. 2003) (citing cases). The disagreement concerned the Supreme Court's 1996 decision in *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S. Ct. 1114 (1996), wherein the Court held that the Indian Commerce Clause of the Constitution, which authorizes Congress to "regulate Commerce … with the Indian Tribes," U.S. Const., Art. I, § 8, cl. 3, does not grant Congress the power to abrogate state sovereign immunity. *See Seminole Tribe*, 517 U.S. at 47. (1996). As explained by the Court therein, "Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at 72-73. Relying on this language, the majority of courts considering this issue found no basis to distinguish Congress' power under the Indian Commerce Clause from its authority under the Bankruptcy Clause for purposes of state sovereign immunity, as both clauses are set forth in Article I of the Constitution. *See, e.g., Nelson v. La Crosse County Dist. Atty.*, 301 F.3d 820, 832 (7th Cir. 2002). The Sixth Circuit Court of Appeals disagreed, however, concluding that "the text of the Constitution and other evidence of the Framers' intent demonstrate that under the Bankruptcy Clause of Article I, section 8, Congress has the power to abrogate state sovereign immunity," *In re Hood*, 319 F.3d at 762, and that "Congress clearly exercised that power in 11 U.S.C. 106(a)." *Id.* at 759.

Subsequently, in *Katz*, the Supreme Court upheld the Sixth Circuit's conclusion in *Hood*, although its reasoning differed somewhat. *See* 2 *Collier on Bankruptcy* ¶ 106.02[2][b] (16th ed. 2012).

> Rather than concluding that section 106(a) is a valid congressional abrogation of the states' sovereign immunity, the Supreme Court held that the states gave up their immunity when they ratified the Bankruptcy Clause. Thus Congress' authority to enact bankruptcy legislation that treats states in the same way as other creditors "arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute."

*Id.* (quoting Katz, 546 U.S. at 379). After *Katz*, courts throughout the country, including the district court for this district speaking through the Honorable Harry S. Mattice, Jr., have uniformly concluded that states and their agencies are not permitted to assert the defense of sovereign

5

immunity in proceedings within the scope of Congress' bankruptcy power because the states in ratifying the Bankruptcy Clause gave up their right to do so. *See Johnson v. Chattanooga State Tech. Cmty. Coll. (In re N. Am. Royalties, Inc.)*, No. 1:05-CV-91, 2006 WL 587597, at *4 (E.D. Tenn. Mar. 10, 2006) (state community college and state board of regents not immune from § 547 preference action to recover tuition payments); *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 437 B.R. 88, 99 (S.D.N.Y. 2010) (Under *Katz*, "sovereign immunity is abrogated with respect to proceedings necessary to effectuate, or ancillary to, the bankruptcy court's *in rem* jurisdiction."); *Vt. Dept. of Taxes v. Quality Stores, Inc. (In re Quality Stores, Inc.)*, 354 B.R. 840 (W.D. Mich. 2006) (Vermont Department of Taxes not immune from § 542 turnover action seeking refund of sales tax overpayments); *In re Pavlovic*, ___ B.R. ___, 2012 WL 2828017, at *2 (Bankr. N.D. Ill. 2012) ("[U]nder *Katz*, sovereign immunity does not bar a debtor from seeking to avoid a judicial lien under 11 U.S.C. § 522 held by a state or county."); *Brown v. Fox Broadcasting Co. (In re Hamilton)*, 433 B.R. 911, 918 (Bankr. N.D. Ga. 2010) ("[T]he avoidance and recovery of a preferential transfer is the type of proceeding the bankruptcy court may engage in without offending a state's sovereign immunity.").

With this background, this court turns to an analysis of GLPS's claim that *Katz* is no longer valid. In support of this proposition, GLPS cites *Coleman v. Court of Appeals of Maryland*, ___ U.S. ___, 132 S. Ct. 1327 (2012), and *Virginia Office for Protection & Advocacy v. Stewart*, ___ U.S. ___, 131 S. Ct. 1632 (2011). In *Coleman*, the Supreme Court held that the self-care provision of the Family and Medical Leave Act was not a valid abrogation under § 5 of the Fourteenth Amendment of the states' Eleventh Amendment sovereign immunity. *Coleman*, 132 S. Ct. at 1334. And in *Stewart*, the Court concluded that the *Ex parte Young* exception[2] to sovereign immunity

---

[2] *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908) establishes an unrelated limitation on the scope of sovereign immunity protection by permitting "a private plaintiff to sue a state actor for prospective relief and, if successful, to stop a state from taking illegal action." 13 *Fed. Prac. & Proc*. § 3524.3 (3d ed. 2012). Specifically, "a state official who enforces [an unconstitutional legislative enactment] 'comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" *Stewart*, 131 S. Ct. at 1638 (quoting
(continued...)

permitted a suit in federal court for prospective relief by a state agency against state officials of that same state. *Stewart*, 131 S. Ct. at 1635. Although neither decision mentioned *Katz* or bankruptcy, in *Stewart* the Court observed generally that absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State. *Id.* at 1638. In a footnote to that statement, the Court comments, "We have recognized that Congress may abrogate a State's immunity when it acts under § 5 of the Fourteenth Amendment, *Seminole Tribe v. Florida*, 517 U.S. 44, 59 . . . , but not when it acts under its original Article I authority to regulate commerce, *id.*, at 65-66." *Id.* at 1638 n.2. Similarly, in Justice Ginsburg's dissent in *Coleman*, she states that she "remain[s] of the view that Congress can abrogate state sovereign immunity pursuant to its Article I Commerce Clause power," citing Justice Souter's dissent in *Seminole Tribe*. *See Coleman*, 132 S. Ct. at 1339 n.1 (J. Ginsburg, dissent) (citing *Seminole Tribe*, 517 U.S. at 100). According to GLPS, the significance of the *Coleman* and *Stewart* statements is that Congress may abrogate sovereign immunity only when it acts pursuant to § 5 of the Fourteenth Amendment, that consequently Congress may not abrogate sovereign immunity under Article I of the Constitution, and any abrogation of sovereign immunity by Congress pursuant to the Bankruptcy Clause is invalid because it is in Article I. GLPS maintains that by virtue of its footnote citation to *Seminole Tribe*, the Supreme Court has now revisited the issue of abrogation under Article I, and has in effect concluded that *Seminole Tribe* applies in the bankruptcy context.

There are several problems with this argument. The first is that there is no indication whatsoever in *Stewart* and *Coleman* that *Katz* was being overruled. As a general rule, the Supreme Court does not overturn precedent by mere implication. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18, 120 S. Ct. 1084 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."). In fact, the Court has directed that "[i]f a precedent of th[e] [Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917 (1989). Thus, this court is duty

---

²(...continued)
*Ex part Young*, 209 U.S. at 159-60).

7

bound to follow *Katz* until expressly advised otherwise by an appellate court. This principle is especially applicable here since there is no reference to *Katz* in either *Coleman* or *Stewart,* and nothing to indicate that the Court was reconsidering *Seminole Tribe* in the context of bankruptcy.

More fundamentally, contrary to GLPS's argument, the holding in *Katz* was not based on the conclusion that Congress may abrogate sovereign immunity pursuant to Article I's Bankruptcy Clause. Rather, the Supreme Court concluded that the states themselves waived or subordinated sovereign immunity for matters within or ancillary to the bankruptcy courts' *in rem* jurisdiction by ratifying the Constitution. *See Katz*, 546 U.S. at 373 ("Insofar as orders ancillary to the bankruptcy courts' *in rem* jurisdiction, like orders directing turnover of preferential transfers, implicate States' sovereign immunity from suit, the States agreed in the plan of the Convention not to assert that immunity."); *id*. at 362-63 ("The history of the Bankruptcy Clause, the reasons it was inserted in the Constitution, and the legislation both proposed and enacted under its auspices immediately following ratification of the Constitution demonstrate that it was intended not just as a grant of legislative authority to Congress, but also to authorize limited subordination of state sovereign immunity in the bankruptcy arena."); and *id*. at 378 ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts."); *see also Fla. Dept. of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073, 1083 (11th Cir. 2011) (characterizing the *Katz* holding as "consent by ratification"). Thus, the question of whether Congress can abrogate sovereign immunity under Article I of the Constitution is irrelevant and even moot for bankruptcy purposes. Further, the fact that the Court did not expressly reference in *Coleman* or *Stewart* sovereign immunity in the bankruptcy arena is of no significance. The issue before the Court in both cases was the validity of statutory abrogations by Congress, rather than waivers by the states.

Finally in this regard, this court observes, as previously discussed, that even prior to *Katz* the Sixth Circuit Court of Appeals held in *Hood* that state sovereign immunity was validly abrogated in § 106(a) of the Bankruptcy Code, notwithstanding *Seminole Tribe*. *See In re Hood*, 319 F.3d at 761-62; *see also H.J. Wilson Co. v. Comm'r of Revenue (In re Serv. Merch. Co.)*, 333 F.3d 666, 668-69 (6th Cir. 2003) (reaffirming *Hood* holding); *Katz v. Central Va. Cmty. Coll. (In re Wallace's Bookstore, Inc.)*, 106 F. App'x 341 (6th Cir. 2004), *aff'd on other grounds*, 546 U.S. 356 (2006).

If *Katz* has been implicitly rejected, then this Court continues to be bound by *Hood*, absent clear directive otherwise.

### III.

For the reasons discussed herein, an order will be entered denying GLPS's motion to dismiss.

# # #